1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11   VINOD C. PATWARDHAN, M.D.,  )   CV 13-0076 RSWL (DTBx)
                                 )
12                 Plaintiff,    )
                                 )    **ORDER Re: Defendants'**
13       v.                      )    **Motion for Summary**
                                 )    **Judgment [41];**
14                               )    **Plaintiff's Motion for**
     UNITED STATES OF AMERICA,   )    **Leave to File a First**
15   ex rel., DEPARTMENT OF       )    **Amended Complaint ["43];**
     HEALTH AND HUMAN SERVICES,  )    **Stipulation to Continue**
16   CENTERS FOR MEDICARE AND    )    **[64]**
     MEDICAID SERVICES; GENERAL  )
17   SERVICES ADMINISTRATION;    )
     and PALMETTO GBA, LLC,      )
18                               )
                    Defendants.  )
19   _____)

20        Currently before the Court are two Motions: (1)

21   Defendants Centers for Medicare and Medicaid Services

22   ("CMS") and General Services Administration's ("GSA")

23   (collectively, "Defendants") Motion for Summary

24   Judgment [41] and (2) Plaintiff Vinod C. Patwardhan's

25   Motion for Leave to File a First Amended Complaint

26   [43].  Both Motions were filed on January 17, 2014.

27   Defendants filed an Opposition to Plaintiff's Motion on

28   January 28, 2014 [47] and Plaintiff filed an Opposition

to Defendants' Motion on that day as well [48].
Defendants filed a Reply to their Motion on February 4,
2014 [54] and Plaintiff also filed a Reply to his
Motion on that day [56].  Both Motions were taken under
submission on February 12, 2014 [61].

Having reviewed all papers submitted pertaining to
the Motions, and having considered all arguments
presented to the Court, the court **NOW FINDS AND RULES
AS FOLLOWS:**

Defendants' Motion for Summary Judgment is hereby
**GRANTED** and Plaintiff's Motion for Leave to File a
First Amended Complaint is hereby **DENIED**.

## I.  Background

In May 2009, Plaintiff was convicted of conspiracy,
misbranding drugs into interstate commerce with intent
to defraud or mislead, and smuggling.  Defendants'
Statement of Uncontroverted Facts and Conclusions of
Law ("DSUF") ¶ 2; Plaintiff's Statement of Genuine
Issues ("PSGI") ¶ 2; see United States v. Patwardhan,
ED CR 08-00172 VAP, 2009 WL 2190191, at *1 (C.D. Cal.
July 18, 2009) aff'd 422 F. App'x 614 (9th Cir. 2011).
As a result of Plaintiff's conviction, Defendant CMS
revoked Plaintiff's Medicare billing privileges
effective May 8, 2009 pursuant to 42 U.S.C. §
1395u(h)(8) and 42 C.F.R. § 424.535.  DSUF ¶ 3; PSGI ¶
3; Dkt. #41-3.

Defendant CMS is the division of the Department of
Health and Human Services ("HHS") responsible for

1   administering the Medicare program on behalf of the
2   Secretary of HHS.  <u>See</u> Health Care Financing
3   Administration; Statement of Organization, Functions,
4   and Delegations of Authority, 46 Fed. Reg. 56,911 (Nov.
5   19, 1981); 42 C.F.R. § 400.200.  42 U.S.C. §
6   1395u(h)(8) allows the Secretary of HHS to refuse to
7   enter into an agreement, to terminate an agreement, or
8   to refuse to renew an agreement with a physician or
9   supplier, "in the event that such physician or supplier
10  has been convicted of a felony under Federal or State
11  law for an offense which the Secretary determines is
12  detrimental to the best interests of the program or
13  program beneficiaries."  Defendant CMS, accordingly,
14  has the authority to revoke a physician's Medicare
15  billing privileges when he is convicted of a felony.
16  <u>See</u> 42 C.F.R. § 424.535(a)(3).  Defendant CMS delegates
17  certain functions to its Medicare administrative
18  contractors, including determining the amount of the
19  payments to be made to providers as required by the
20  Medicare statute.  42 U.S.C. § 1395kk-1(a)(4)(A).

21      When a physician's billing privileges are revoked
22  based on a felony conviction, the revocation is
23  effective as of the date of the conviction.  42 C.F.R.
24  § 424.535(g).  Not only is such a physician no longer
25  eligible to receive payment from Medicare (42 C.F.R. §
26  424.505), but such a physician is also barred from
27  participating in the Medicare program from the
28  effective date of the revocation until the end of the

re-enrollment bar (42 C.F.R. § 424.535(c)).

In 2011, the Office of the Inspector General ("OIG"), a staff division of HHS, excluded Plaintiff from participation in Medicare, Medicaid, and all other federal health programs pursuant to 42 U.S.C. § 1320a-7. DSUF ¶ 4; PSGI ¶ 4; Dkt. #41-4. The exclusion became effective on July 20, 2011. <u>See</u> Dkt. ##41-4, 41-5. However, OIG later granted Plaintiff a partial waiver of his exclusion pursuant to 42 U.S.C. § 1320a-7(c)(2)(B) and 42 C.F.R. § 1001.1801(b). DSUF ¶ 5; PSGI ¶ 5; Dkt. ##41-4, 41-5. OIG granted Plaintiff a limited waiver for oncological items and services he provided in Upland, California, which became effective on December 20, 2011. <u>See</u> Dkt. #41-5.

Defendants contend that the information about Plaintiff's waiver was added to the MED on February 9, 2012. Dkt. #41-15 (Vogel Decl.) ¶ 5, Ex. A.[1]  In October 2012, Defendant CMS, apparently in connection

_____

[1] Plaintiff objects to the Vogel Declaration for lack of foundation and for lack of personal knowledge. Dkt. #55 at 3. Plaintiff's objection is **OVERRULED** as Ms. Vogel has personal knowledge from her position as Group Director for the Financial Management Systems Group ("FMSG") for Defendant CMS. Dkt. #41-15 (Vogel Decl.) ¶ 1. Ms. Vogel was the Group Director during the time period in question and had a supervisory and oversight role over the relevant subject matter. <u>Id.</u> at ¶ 2. Furthermore, she obtained personal knowledge from the FMSG staffers whose responsibility is to add waiver information to the MED and by reviewing the screenshots of Plaintiff's MED file. Dkt. #54-8 (Suppl. Vogel Decl.) ¶¶ 4-5.

with 42 C.F.R. § 402.308, decided to recognize OIG's partial waiver and reactivate Plaintiff's Medicare billing privileges for covered services to Medicare beneficiaries within the scope of OIG's partial waiver of exclusion. DSUF ¶ 6; PSGI ¶ 6; Dkt. ##41-6, 41-7.[2]

The Complaint alleges that Defendant CMS has failed to correct or amend its List of Excluded Individuals and Entities ("LEIE"). Compl. ¶¶ 18-19. The Complaint further alleges that Defendant CMS violated 5 U.S.C. § 552a by: (1) failing to accurately and timely maintain the LEIE; (2) failing to make reasonable efforts to assure the LEIE's accuracy and completeness; and (3) refusing to acknowledge receipt, or respond to, Plaintiff's request to amend or correct the LEIE. Id. at ¶ 24.

In fact, OIG, not Defendant CMS, maintains the LEIE, a publicly available system of records of excluded individuals and entities.[3] See Background Information, OIG, HHS (Feb. 18, 2014),

_____

[2] Plaintiff objects to Exhibits 6 and 7 (Dkt. ##41-6, 41-7) to the Defendants' Motion for Summary Judgment on the ground that Defendants have failed to properly authenticate these documents under Federal Rule of Evidence 901. Dkt. #55 at 2. The Court **OVERRULES** Plaintiff's objection as the subsequently filed Declaration of Mark Majestic authenticates these documents. Dkt. #54-9 (Majestic Decl.) ¶¶ 3-4.

[3] Plaintiff contends that the Complaint's reference to CMS maintaining the LEIE was an inadvertent, or "scrivener's" error. PSGI ¶ 7; Dkt. #43 (Ferruci Decl.) ¶ 7; Dkt. #50 (Ferruci Decl.) ¶ 14.

1  https://oig.hhs.gov/exclusions/background.asp; Search
2  the Exclusions Database, OIG, HHS (Feb. 18, 2014),
3  http://exclusions.oig.hhs.gov; Dkt. #41-15 (Vogel
4  Decl.) ¶ 4.   The Secretary of HHS delegates to OIG
5  authority to exclude individuals and entities from
6  federal health care programs based upon certain
7  categories of convictions or other specified conduct.
8  42 U.S.C. § 1320a-7; 42 C.F.R. § 1001.   If an
9  individual or entity is excluded by OIG, he may not be
10 reimbursed under Medicare, Medicaid, or another federal
11 healthcare program.   42 C.F.R. § 1001.2.   OIG has the
12 authority to waive an individual or entity's exclusion
13 as a provider from federal health care programs.   42
14 U.S.C. § 1320a-7(c)(3)(B); 42 C.F.R. § 1001.1801.
15 Waivers may be given to excluded providers who are the
16 "sole community physician or sole source of essential
17 specialized services in a community."   Id.   On top of
18 the LEIE, OIG also maintains a list of excluded
19 individuals or entities to whom OIG has granted a
20 waiver.   See Waivers, OIG, HHS (Feb. 18, 2014),
21 http://oig.hhs.gov/exclusions/waivers.asp.

22      Defendant CMS, on the other hand, is the system
23 manager of the Medicare Exclusion Database ("MED").
24 See Privacy Act of 1974; Report of New System, 67 Fed.
25 Reg. 8810-01 (Feb. 26, 2002).   The purpose of the MED
26 "is to retrieve information to aid in the ability of
27 CMS and its contractors . . . to ensure that no
28 Medicare payments are made with respect to any item or

service . . . furnished by an individual or entity during the period when such individual or entity is excluded from participation in Medicare." Id. The MED contains information about individuals and entities who have been excluded by OIG; the MED also includes waiver information. Id.; Dkt. #41-15 (Vogel Decl.) ¶ 4. Defendant CMS receives a monthly file of exclusion data from the OIG; that file is automatically loaded and the data is incorporated into the MED. Dkt. #41-15 (Vogel Decl.) ¶ 3. When there is a waiver or exception to an exclusion, OIG sends this information to Defendant CMS to incorporate into the MED through the application's front-end interface. Id., Ex. A.

Access to the MED is limited. See Privacy Act of 1974; Report of a Modified or Altered System of Records, 71 Fed. Reg. 70967 (Dec. 7, 2006). In fact, "[t]he government will only release MED information that can be associated with an individual as provided" under its routine use policies. Id. Rather, MED information is provided only in certain circumstances, generally to support Defendant CMS, its contractors, research organizations, or other government agencies in connection with the Medicare and Medicaid programs. Id. In any event, it is clear that the MED is not publicly available. See id.

Defendant GSA is a federal executive agency. 40 U.S.C. § 301. Defendant GSA currently operates the System for Award Management ("SAM") Exclusions, which

includes a database called the Excluded Parties List
System ("EPLS").  48 C.F.R. 9.404(a)(1); DSUF ¶ 13;
PSGI ¶ 13.  Plaintiff does not dispute that he was not
damaged by any information in either EPLS or SAM.  DSUF
¶ 15; PSGI ¶ 15.

Plaintiff ultimately filed a Complaint on January
11, 2013 [1], alleging, inter alia, that Defendants had
injured him by failing to maintain the LEIE and EPLS in
accordance with their legal obligations.  See Compl. ¶¶
23-25.

## II.  Legal Standard

## A.  Summary Judgment - Fed. R. Civ. P. 56

Summary judgment is appropriate when there is no
genuine issue of material fact and the moving party is
entitled to judgment as a matter of law.  Fed. R. Civ.
P. 56(c).  A fact is "material" for purposes of summary
judgment if it might affect the outcome of the suit,
and a "genuine issue" exists if the evidence is such
that a reasonable fact-finder could return a verdict
for the non-moving party.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986).  The evidence, and any
inferences based on underlying facts, must be viewed in
the light most favorable to the opposing party.
Twentieth Century-Fox Film Corp. v. MCA, Inc., 715 F.2d
1327, 1329 (9th Cir. 1983).

Where the moving party does not have the burden of
proof at trial on a dispositive issue, the moving party
may meet its burden for summary judgment by showing an

"absence of evidence" to support the non-moving party's case. Celotex v. Catrett, 477 U.S. 317, 325 (1986).

The non-moving party, on the other hand, is required by Fed. R. Civ. P. 56(c) to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Id. at 324. Conclusory allegations unsupported by factual allegations are insufficient to create a triable issue of fact so as to preclude summary judgment. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993). A non-moving party who has the burden of proof at trial must present enough evidence that a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." Anderson, 477 U.S. at 255. Where a motion for summary judgment is grounded on the assertion that the non-moving party has no evidence, the non-moving party may defeat the motion by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party." Celotex, 477 U.S. at 332.

Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See Falls Riverway Realty, Inc. v. Niagara Falls, 754 F.2d 49 (2d Cir. 1985); Thornhill Pub. Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). The party who will have the burden of proof must persuade the Court that it will have sufficient admissible evidence to justify

going to trial.  <u>Notmeyer v. Stryker Corp.</u>, 502 F.
Supp. 2d 1051, 1054 (N.D. Cal. 2007).

In ruling on a motion for summary judgment, the
Court's function is not to weigh the evidence, but only
to determine if a genuine issue of material fact
exists.  <u>Anderson</u>, 477 U.S. at 255.

**B.   <u>Leave to Amend - Fed. R. Civ. P. 15</u>**

Leave to amend should be freely given "when justice
so requires."  Fed. R. Civ. P. 15(a); <u>Foman v. Davis</u>,
371 U.S. 178, 182 (1962).  Determining whether to grant
leave to amend "is generally within the sound
discretion of the trial court" and "denial of a motion
for leave to amend is reviewed for an abuse of
discretion."  <u>Swanson v. U.S. Forest Serv.</u>, 87 F.3d
339, 343 (9th Cir. 1996) (citing <u>Rhoden v. United
States</u>, 55 F.3d 428, 432 (9th Cir. 1995); <u>United States
v. Cnty of San Diego</u>, 53 F.3d 965, 969 n.6 (9th Cir.
1995)); <u>Breakdown Servs., Ltd. v. Now Casting, Inc.</u>,
550 F. Supp. 2d 1123, 1132 (C.D. Cal. 2007).

Four factors commonly used to justify a denial of
leave to amend are (1) bad faith, (2) undue delay, (3)
prejudice to the opposing party, and (4) futility of
the amendment.  <u>DCD Programs, Ltd. v. Leighton</u>, 833
F.2d 183, 186 (9th Cir. 1987); <u>Perfect 10, Inc. v.
Google, Inc.</u>, No. CV 04-9484 AHM (SHX), 2008 WL 4217837
at *2 (C.D. Cal. July 16, 2008).  Another factor that
courts occasionally consider is whether the plaintiff
has previously amended its complaint.  <u>DCD Programs</u>,

833 F.2d at 186, n.3.  However, these enumerated
factors are not of equal weight: potential prejudice to
the opposing party carries the greatest weight among
the factors.  <u>Eminence Capital, LLC v. Aspeon, Inc.</u>,
316 F.3d 1048, 1052 (9th Cir. 2003).  "Absent
prejudice, or a strong showing of any of the remaining
. . . factors, there exists a *presumption* under rule
15(a) in favor of granting leave to amend."  <u>Id.</u>  Given
the liberal policy of the Federal Rules of Civil
Procedure in favor of amendments, the nonmoving party
bears the burden of demonstrating why leave to amend
should *not* be granted.  <u>Genentech, Inc. v. Abbott
Labs.</u>, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989);
<u>Breakdown Servs.</u>, 550 F. Supp. 2d at 1132.

**III.  Discussion**

**A.  <u>Plaintiff's Motion for Leave to File a First
Amended Complaint</u>**

Leave to amend should be freely given "when justice
so requires."  Fed. R. Civ. P. 15(a)(2).  Courts
typically look to four factors in determining whether
to deny granting leave to amend: (1) bad faith, (2)
undue delay, (3) prejudice to the opposing party, and
(4) futility of amendment.  <u>DCD Programs</u>, 833 F.2d at
186.  Defendants argue that three factors, undue delay,
prejudice, and futility, are present here.[4]

---

[4] The Court notes that although Defendants do not
argue that Plaintiff filed the Motion with bad faith,
other courts have held that a motion to amend filed "as

1        1.   Undue Delay

2       In this case, it is clear that Plaintiff has unduly

3  delayed in seeking amendment.   Plaintiff knew of the

4  defects in his Complaint as early as May 14, 2013, when

5  the Parties filed their Joint Rule 26(f) Report.   See

6  Dkt. #12.   Plaintiff clearly indicates in his portion

7  of the Report that he had mistakenly named Defendant

8  CMS as the entity maintaining the LEIE.   See id. at 1

9  n.1 ("Plaintiff's Petition and Complaint inadvertently

10  states that plaintiff seeks to have CMS amend the List

11  of Excluded Individuals and Entities (LEIE) but

12  plaintiff actually seeks to have CMS amend the Medicare

13  Exclusion Database ('MED'). The LEIE is maintained by

14  the OIG. The MED is maintained by CMS.").   The Report

15  also contemplates OIG's addition as a defendant, given

16  OIG's role in maintaining the LEIE.   See id. at 1.

17  Given that his own portion the Report explains the

18  Complaint's defects, Plaintiff can hardly say that he

19  only became aware of these defects on October 24, 2013

20  when Defendants' Counsel brought them to his attention.

21  Pl.'s Mot. for Leave to File First Am. Compl. 5:7-10.

22  In short, Plaintiff has delayed without reasonable

23  explanation for eight months before seeking leave to

24  amend.

25

26  a last-ditch attempt to avoid the case being dismissed
    in its entirety" exhibits bad faith.   Trans Video
27  Elec., Ltd. v. Sony Elec., Inc., 278 F.R.D. 505, 510
    (N.D. Cal. 2011).   Accordingly, this factor weighs in
28  favor of Defendants.

In considering whether a party has unduly delayed, courts inquire into "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 953 (quoting Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990)). Courts have found that an eight month delay in seeking leave to amend is unreasonable. See Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 799 (9th Cir. 1991) (holding that a plaintiff unduly delayed in seeking amendment where it waited eight months after summary judgment had been granted against it and two years after filing of the initial complaint); Jackson, 902 F.2d at 1388 (finding undue delay where plaintiffs delayed filing an amended complaint for seven months from the time they had analyzed all the requisite facts); Alzheimer's Inst. of Am. v. Elan Corp. PLC, 274 F.R.D. 272, 277 (N.D. Cal. 2011) (finding three month delay in seeking leave to amend where party seeking to amend stated delay was due to inadvertence constituted an undue delay). Here, Plaintiff knew of his Complaint's mistaken identification of Defendant CMS as the entity maintaining the LEIE and of his failure to name OIG as a defendant as early as May 2013. Waiting eight months to correct these errors surely constitutes an undue delay.

Moreover, courts have found undue delay where a party seeks leave to amend on the eve of the motion or

discovery cutoff date.  See AmerisourceBergen, 465 F.3d
at 957 ("We have often affirmed the denial of leave to
amend when the motion was made after the cutoff date
for such motions, or when discovery had closed or was
about to close"); Zivkovic v. S. California Edison Co.,
302 F.2d 1080, 1087 (9th Cir. 2002) (affirming denial
of motion to amend where motion was filed only several
days before the discovery cutoff and months before
trial); Solomon v. N. Am. Life & Cas. Ins. Co., 151
F.3d 1132, 1139 (9th Cir. 1998) (affirming district
court's conclusion that motion to amend would cause
undue delay and prejudice where motion was made on the
eve of the discovery deadline).  Plaintiff filed the
instant Motion for Leave to File a First Amended
Complaint on the discovery and motion cutoff date.  See
Dkt. ##28, 37, 43.  Moreover, Plaintiff delayed in
filing this Motion even after he had already stipulated
with Defendants to extend the original scheduling order
(see Dkt. #28) and then further stipulated to extend
the discovery cutoff date (see Dkt. #37).

    In short, the Court finds that Plaintiff unduly
delayed in seeking leave to amend.

    Nevertheless, Plaintiff correctly notes that undue
delay, standing by itself, is generally insufficient to
justify denying a motion to amend.  See Bowles v.
Reade, 198 F.3d 752, 758 (9th Cir. 1999) ("Undue delay
by itself, however, is insufficient to justify denying
a motion to amend.") (citing DCD Programs, 833 F.2d at

14

186); <u>Trans Video</u>, 278 F.R.D. at 507; <u>Boskoff v. Yano</u>, 217 F. Supp. 2d 1077, 1093 (D. Haw. 2001).

    2.  <u>Prejudice to Opposing Party</u>

    Defendants also argue that allowing Plaintiff leave to amend at this date would cause prejudice, particularly because Plaintiff's proposed schedule following amendment would leave OIG with no opportunity to seek discovery or engage in motion practice. Plaintiff avers that these assertions are misplaced because Defendants have known of Plaintiff's assertions since the inception of the case and no new discovery need be conducted.

    The Court rejects Plaintiff's arguments and finds that allowing Plaintiff leave to amend would prejudice Defendants and the proposed Defendant OIG.

    "Amending a complaint to add a party poses an especially acute threat of prejudice to the entering party." <u>DCD Programs</u>, 833 F.2d at 187.  In this sense, allowing Plaintiff to add OIG as a Defendant would certainly threaten OIG with prejudice even if, as Plaintiff asserts, OIG has been aware of this Action from the case's inception.

    But more problematic is Plaintiff's request to reopen discovery.  Specifically, Plaintiff, in conjunction with his Opposition to Defendants' Motion for Summary Judgment, requests that this Court allow him to produce expert discovery in the form of experts John Edelston and Michael Kaplan.  This certainly would

1  require this Court to reopen discovery - not just to
2  allow the Parties to depose Mr. Edelston and Mr. Kaplan
3  - but also to allow Defendants time to identify and
4  retain rebuttal experts.  "A need to reopen discovery
5  and therefore delay the proceedings supports a district
6  court's finding of prejudice from a delayed motion to
7  amend the complaint." Lockheed Martin Corp. v. Network
8  Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999)
9  (citing Solomon, 151 F.3d at 1139).  Furthermore,
10 Plaintiff's proposed schedule - a continuation of the
11 trial date by 60 days to allow for OIG to file a
12 responsive pleading (see Pl.'s Mot. for Leave to File a
13 First Am. Compl. 6:16-19) - would exacerbate the
14 prejudice suffered by proposed Defendant OIG and the
15 other Defendants, who would have little time to prepare
16 their rebuttal to Mr. Edelston's testimony and
17 simultaneously prepare its defense for trial.

18     The Court thus finds that allowing Plaintiff to
19 amend his Complaint would strongly prejudice Defendants
20 and proposed Defendant OIG.

21     3.  Futility of Amendment

22     Finally, Defendants contend that, for the reasons
23 laid out in their Motion for Summary Judgment,
24 Plaintiff's proposed amendments would be futile.  See
25 Def.'s Opp'n to Mot. for Leave to File a First Am.
26 Compl. 3:1-4:8.  The Court analyzes Defendants' Motion
27 for Summary Judgment below.  Because the Court grants
28 Defendants' Motion for Summary Judgment, the Court also

finds that Plaintiff's proposed amendment is futile.
See Jackson, 902 F.2d at 1388 n.4 (holding that the
issue of futility for motion to amend is "inextricably
tied to the propriety of the trial court's granting" of
a motion for summary judgment).

### 4. Conclusion

Because Plaintiff unduly delayed in seeking leave
to amend, the proposed amendment would prejudice the
existing Defendants as well as the proposed Defendant
OIG, and because the proposed amendments would be
futile, the Court **DENIES** Plaintiff's Motion for Leave
to File a First Amended Complaint [43].

**B.** **Defendants' Motion for Summary Judgment**

### 1. Summary Judgment as to Defendant GSA

As a preliminary matter, given Plaintiff's
willingness to dismiss Defendant GSA as a Defendant
(see Pl.'s Opp'n to Mot. for Summ. J. 2:3-7), and
because Plaintiff does not dispute that he was not
damaged by information in either the EPLS or SAM (see
PSGI ¶ 15), the Court should **GRANT** Defendants' Motion
for Summary Judgment as to Defendant GSA.

### 2. Summary Judgment as to Defendant CMS

#### a. *Cause of Action under the Privacy Act, 5 U.S.C. § 552a*

Plaintiff's sole remaining cause of action is under
the Privacy Act's accuracy provisions.  See Compl. ¶¶
23-25; Dkt. #38.

Generally speaking, in order to state an accuracy

claim under the Privacy Act, "an individual must show '1) that the government failed to fulfill its record keeping obligation, 2) which failure proximately caused the adverse determination, 3) that the agency failed intentionally or willfully to maintain the records, and 4) that the plaintiff suffered actual damages.'" <u>Rouse v. U.S. Dep't of State</u>, 567 F.3d 408, 417 (9th Cir. 2009) (quoting <u>Rose v. United States</u>, 905 F.2d 1257, 1259 (9th Cir. 1990); <u>Hewitt v. Grabicki</u>, 794 F.2d 1373, 1379 (9th Cir. 1986)); 5 U.S.C. §§ 552a(g)(1)(C) and (D), 552a(g)(4).[5]

_____

[5] The Court notes that Defendants assert that the Court lacks jurisdiction over Plaintiff's unexhausted claims arising under the Medicare Act.  See Def.'s Mot. for Summ. J. 9:18-23; Def.'s Reply to Mot. for Summ. J. 1:23-3:5.

The Medicare Act states that "[j]urisdiction over cases 'arising under' Medicare exists only under 42 U.S.C. § 405(g), which requires an agency decision in advance of judicial review." Kaiser v. Blue Cross of California, 347 F.3d 1107, 1111 (9th Cir. 2003); 42 U.S.C. § 405(h).  This jurisdictional requirement extends to cases "(1) where the 'standing and substantive basis for the presentation of the claims' is the Medicare Act . . . and (2) where the claims are 'inextricably intertwined' with a claim for Medicare benefits."  Uhm v. Humana, Inc., 620 F.3d 1134, 1141 (9th Cir. 2010) (quoting Heckler v. Ringer, 466 U.S. 602, 614-15 (1984)).  Generally speaking, a claim is inextricably intertwined with the Medicare Act when it is ultimately a claim for Medicare benefits or for the denial of those benefits under the Act.  Id. at 1142-43.

This Action, on the other hand, does not, at

18

1            i.  *Whether Defendants' Failure was*

2                 *Intentional or Willful*

3        In order for a plaintiff to prevail under his

4  Privacy Act claim, he must show that the agency acted

5  in a manner that was intentional or willful.  <u>See</u> 5

6  U.S.C. § 552a(g)(4).  Courts have held this to require

7  that the plaintiff show that the agency's conduct

8  amounted to something greater than gross negligence.

9  <u>Beaven v. U.S. Dep't Justice</u>, 622 F.3d 540, 549 (6th

10 Cir. 2010); <u>Mount v. U.S. Postal Serv.</u>, 79 F.3d 531,

11 534 (6th Cir. 1996) (quoting <u>White v. Office of</u>

12 <u>Personnel Mgmt.</u>, 840 F.2d 85, 87 (D.C. Cir. 1988);

13 <u>Rose</u>, 905 F.2d at 1260 (quoting <u>Johnston v. Horne</u>, 875

14 F.2d 1415, 1422 (9th Cir. 1989)); <u>Covert v. Harrington</u>,

15 876 F.2d 751, 757 (9th Cir. 1989) (holding that an

16 agency acts in a willful or intentional manner when it

17 ───────────────

18 bottom, involve a claim for or a denial of benefits

19 under the Medicare Act - even if downstream Medicare
   reimbursement providers denied Plaintiff's requests.

20 Rather, Plaintiff complains of injuries caused by

21 Defendants' failures in performing their record-keeping
   obligations.  That these alleged failures ultimately

22 resulted in denied Medicare benefits does not mean,

23 necessarily, that this Action arises under the Medicare
   Act.  Quite simply, the Parties do not dispute whether

24 Plaintiff was entitled to Medicare reimbursements.

25 <u>See</u> DSUF ¶ 6; PSGI ¶ 6.  Rather, the Parties contest
   Defendants' diligence in maintaining the records

26 documenting Plaintiff's entitlement to such benefits.

27 As such, the Court finds that Plaintiff did not have to
   exhaust his administrative remedies under 42 U.S.C. §

28 405(h).  Consequently, the Court has jurisdiction over
   this Action.

acts without grounds for believing the act to be lawful
or flagrantly disregarding others' rights under the
Privacy Act).

In this case, Defendants have presented evidence
that Defendant CMS amended the MED to reflect the OIG's
waiver of exclusion on February 9, 2012.  See Dkt. #41-
15 (Vogel Decl.) ¶ 5, Ex. A; Dkt. #54-8 (Suppl. Vogel
Decl.) ¶¶ 4-5, Ex. B.  Defendants have also presented
evidence that OIG only granted Plaintiff his waiver
effective December 20, 2011.  Dkt. #41-5.  In other
words, it appears that Defendant CMS at worst delayed a
month and a half before amending the MED to reflect
OIG's waiver – conduct hardly amounting to gross
negligence.  See Moskiewicz v. U.S. Dep't of
Agriculture, 791 F.2d 561, 563-64 (7th Cir. 1986)
(affirming district court's grant of summary judgment
on plaintiff's Privacy Act claim where under the worst
case scenario the defendant was merely negligent in
maintaining its records).

Nevertheless, Plaintiff points to an internal
memorandum within Defendant CMS purporting to show that
Defendant CMS was aware of OIG's waiver as early as
July 25, 2011 but did not update the MED until February
9, 2012.  See Dkt. #50 (Ferrucci Decl.) ¶ 8, Ex. F.

Even assuming that Defendant CMS was aware of OIG's
waiver as early as July 25, 2011, it is not clear how
Defendant CMS' delaying until February 9, 2012 to
update the MED could constitute grossly negligent

behavior given that the Parties do not dispute that
Defendant CMS did not recognize the OIG partial waiver
until October 2012.  See DSUF ¶ 6; PSGI ¶ 6.  In other
words, if Defendant CMS did not recognize OIG's waiver
until October 2012 (DSUF ¶ 6; PSGI ¶ 6), it would have
made no difference whether the MED was amended.  Either
way, Plaintiff's Medicare reimbursement claims would
still be denied.  See 42 C.F.R. §§ 424.505, 424.535.

Plaintiff also points to another memorandum from
Defendant CMS dated June 29, 2011 generally stating
that Defendant CMS had become aware that problems were
occurring in implementing "the prohibition against
making payments for items or services furnished by an
excluded provider or entity or for a prescription
written by an excluded provider." Dkt. #50 (Ferrucci
Decl.) ¶ 2, Ex. A at 1.  The solution that Defendant
CMS suggests in the memorandum is that it "will send
Medicare Exclusion Database (MED) files to plan
sponsors each month." Id.  The memorandum also states
that "[i]n addition to the MED, [Defendant] CMS will
also provide information regarding OIG-granted waivers
to exclusions and immediate or retroactive
reinstatements. . . . as we become aware of it." Id.
at 2 (emphasis added).

Even if this procedure applied in Plaintiff's case,
it is unclear whether Defendant CMS failed to adhere to
it, or why it is relevant to Defendant CMS' allegedly
inaccurate maintenance of the MED.  What is relevant

here is whether Defendant CMS failed to maintain the
MED, not whether Defendant CMS failed to adhere to some
other internal procedure.  Furthermore, it is clear
from the face of the memorandum that this procedure was
only to supplement updates to the MED.  In other words,
the memorandum says nothing about Defendant CMS'
maintenance of the MED and does not raise a genuine
issue of material fact with respect to Defendant CMS'
intentionally or willfully inaccurate maintenance of
the MED.

Finally, Plaintiff argues that Defendant CMS'
intent to harm Plaintiff can be inferred from its
history with Plaintiff, including an alleged failure to
comply with Plaintiff's due process rights.  See Pl.'s
Opp'n to Mot. for Summ. J. 4:18-22.  However, most of
these statements pertain to Plaintiff and his Counsel's
interactions with Defendant Palmetto GBA, LLC,[6] not with
Defendant CMS.  The only statement regarding Plaintiff
or his Counsel's interactions with Defendant CMS took
place in October 2012.  See Dkt. #50 (Ferrucci Decl.) ¶
7, Ex. D-E.  Yet it is undisputed that Defendant CMS
only recognized OIG's waiver that very month, hardly
raising any inference of intent or willfulness.  DSUF ¶

---

[6] The Parties stipulated to dismiss Plaintiff's
first and second claims on November 21, 2013 [34],
which this Court granted on November 25, 2013.  As
Plaintiff no longer brings any claims against Defendant
Palmetto, the Court hereby **DISMISSES** Defendant
Palmetto.

6; PSGI ¶ 6.

In sum, Plaintiff has not presented any evidence showing that Defendants failed to update the MED without grounds for believing it to be lawful or otherwise flagrantly disregarded his rights under the Privacy Act.  Such is required to state an accuracy claim under the Privacy Act.  See Covert, 876 F.2d at 757.  Therefore, the Court finds that Plaintiff has failed to show that Defendants intentionally or willfully acted in violation of their record keeping obligations.  For this reason alone, the Court **GRANTS** Defendants' Motion for Summary Judgment.

ii. *Evidence of Damages*

Assuming, *arguendo*, that Plaintiff had presented evidence creating a genuine issue that Defendants acted intentionally and willfully, Plaintiffs still must show the other elements for a Privacy Act claim.  The Court finds, however, that Plaintiff fails to present evidence of actual damages.

Contrary to Plaintiff's contentions (Pl.'s Opp'n to Mot. for Summ. J. 10:1-5), it is clear that Plaintiff must show actual damages to sustain his Privacy Act claim.  Doe v. Chao, 540 U.S. 614, 620, 623 (2004) (holding that the "minimum guarantee" in 5 U.S.C. § 552a(g)(4)(A) "goes only to victims who prove actual damages"); see also Beaven v. U.S. Dep't Justice, 622 F.3d 540, 557-59 (6th Cir. 2010) (applying Chao); Van Alstyne v. Elec. Scriptorium, Ltd., 560 F.3d 199, 203,

206 (4th Cir. 2009) (applying <u>Chao</u> and applying its
reasoning to 18 U.S.C. § 2707 to require proof of
actual damages); <u>Rouse</u>, 567 F.3d at 417; <u>Stafford v.</u>
<u>Social Sec. Admin.</u>, 437 F. Supp. 2d 1113, 1117 (N.D.
Cal. 2008).  To the extent that Plaintiff intends to
solely seek statutory damages, that route is squarely
foreclosed by <u>Chao</u>.

Defendants contend that Plaintiff cannot present
any evidence that he was damaged by the MED because it
was amended to reflect his partial waiver on February
9, 2012.  Def.'s Mot. for Summ. J. 8:20-23.  Plaintiff
counters that there is a genuine dispute as to whether
Defendant CMS actually updated the MED on that date
because some HMOs denied some of Plaintiff's claims in
October 2012.  Pl.'s Opp'n to Mot. for Summ. J. 3:16-
27.  Defendants aver, however, that Plaintiff's
Medicare privileges were only restored in or about
November 2012 and that it is immaterial that some of
Plaintiff's claims were denied in October 2012.  Def.'s
Reply for Mot. Summ. J. 5:24-25.

In support of his contentions, Plaintiff presents
letters, dating from July 20, 2011, to December 17,
2013, from various health plans generally denying
claims for drug prescriptions or medical services
prescribed, administered, or ordered by Plaintiff.  <u>See</u>
Patwardhan Decl. ¶ 5, Ex. C, E.

It is undisputed that Defendant CMS revoked
Plaintiff's Medicare billing privileges on May 8, 2009.

24

DSUF ¶ 3; PSGI ¶ 3.  Moreover, it is undisputed that
the OIG excluded Plaintiff from participation in all
federal health programs in 2011 but also granted a
partial waiver of that exclusion.  DSUF ¶¶ 4-5; PSGI ¶¶
4-5.  It is also undisputed that Defendant CMS
recognized OIG's partial waiver and reactivated
Plaintiff's Medicare billing privileges for covered
services within the limited scope of OIG's partial
waiver in October 2012.  DSUF ¶ 6; PSGI ¶ 6.  In other
words, any letters Plaintiff or his patients received
denying coverage for services rendered prior to October
2012 are irrelevant because Defendant CMS had not yet
recognized OIG's waiver at that time.  DSUF ¶ 6; PSGI ¶
6.  In that period, there was no inaccuracy in the MED
that could cause harm to Plaintiff as Plaintiff could
not be reimbursed under Medicare.

Defendants present testimony from Ms. Vogel clearly
indicating that the MED was updated to reflect OIG's
waiver on February 9, 2012.  See Dkt. #41-15 (Vogel
Decl.) ¶ 5, Ex. A; Dkt. #54-8 (Suppl. Vogel Decl.) ¶¶
4-5, Ex. B.  Ms. Vogel's testimony, in other words,
shows that the MED was amended even prior to Defendant
CMS' reactivation of Plaintiff's Medicare billing
privileges in October 2012.

With respect to the letters denying coverage for
services rendered after October 2012, however, the
inference could be drawn that, despite the MED's
amendment, medical plans continued to deny Plaintiff's

claims.   Yet none of these letters indicate that there
was an inaccuracy in the MED - and none of these
letters indicate that Plaintiff was actually harmed by
the denials, particularly when Defendants present
evidence showing many of these denials were rectified.
See Dkt. ##54-1, 54-2, 54-3.   More importantly,
Plaintiff fails to show that these denials were for
services within his partial waiver.   In short, these
letters fail to present a genuine issue as to
inaccuracies in the MED.

Drawing all inferences in Plaintiff's favor,
Plaintiff's showing possibly raises an issue as to
whether the MED was actually amended.   However,
Plaintiff's showing still fails to raise an issue as to
actual damages.

Plaintiff avers that he has presented evidence of
damages in the form of his profit and loss statements
from years 2006 to 2012.   See Pl.'s Opp'n to Mot. for
Summ. J. 6:12-20.   While it is clear that Plaintiff's
2009 revenue is greater than his 2012 revenue (see
Patwardhan Decl. ¶¶ 8-9, Ex. F), it is also true that
Plaintiff's billing privileges were revoked on May 8,
2009 and only reinstated in October 2012 (see DSUF ¶ 6;
PSGI ¶ 6).   In short, pointing to these financial
statements makes much ado about nothing.   Speculating
based on annual figures does nothing to show actual
damages when Plaintiff had Medicare billing privileges
for unequal portions of both years and had two

intervening years between the compared years.
Plaintiff must do something more than engage in wild
speculation to show that he was actually injured by an
inaccurate MED.

To remedy this, Plaintiff purports to offer the
expert testimony of Mr. Edelston and requests that this
Court defer ruling on the instant Motion until his
expert can provide his report.  <u>See</u> Pl.'s Opp'n to Mot.
for Summ. J. 7:1-16.  Defendants vehemently object on
the basis that Plaintiff does not meet the requirements
for Fed. R. Civ. P. 56(d).  Reply for Mot. for Summ. J.
7:5-10:10.

Under Fed. R. Civ. P. 56(d), a "district court has
discretion to continue a motion for summary judgment if
the opposing party needs to discover essential facts."
<u>California Union Ins. Co. v. Am. Diversified Sav. Bank</u>,
914 F.2d 1271, 1278 (9th Cir. 1990) (citing Fed. R.
Civ. P. 56(f); <u>Garrett v. City & Cnty of San Francisco</u>,
818 F.2d 1515, 1518 (9th Cir. 1987)).  "To prevail
under this Rule, parties opposing a motion for summary
judgment must make '(a) a timely application which (b)
specifically identifies (c) relevant information (d)
where there is some basis for believing that the
information sought actually exists.'"  <u>Blough v.
Holland Realty, Inc.</u>, 574 F.3d 1084, 1091 n.5 (9th Cir.
2009) (quoting <u>Emp'r Teamsters Local Nos. 175 & 505
Pension Trust Fund v. Clorox Co.</u>, 353 F.3d 1125, 1129-
30 (9th Cir. 2004)).  "The burden is on the party

seeking additional discovery to proffer sufficient
facts to show that the evidence sought exists, and that
it would prevent summary judgment." <u>Chance v. Pac-Tel</u>
<u>Teletrac Inc.</u>, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).
Finally, "the district court does not abuse its
discretion by denying further discovery if the movant
has failed diligently to pursue discovery in the past."
<u>California Union Ins.</u>, 914 F.2d at 1278; <u>see also</u>
<u>Qualls v. Blue Cross</u>, 22 F.3d 839, 844 (9th Cir. 1994).

In this case, the Court first finds that Plaintiff
has not acted diligently in seeking this discovery.
Plaintiff did not approach Mr. Edelson until November
11, 2013 (Dkt. #52 (Edelston Decl.) ¶ 5), over a month
after the original discovery cutoff (<u>see</u> Dkt. #15), and
two months after stipulating to extend the expert
discovery cutoff (<u>see</u> Dkt. #27).

Plaintiff's expert disclosures dated December 16,
2013 are incomplete, simply naming and providing the
addresses of Mr. Edelston and Mr. Kaplan.  Dkt. #54-7.
As trial in this case is set for April 8, 2014 (<u>see</u>
Dkt. #28), Plaintiff was obligated to provide his
complete expert disclosures, including a written
report, by January 8, 2014.  <u>See</u> Fed. R. Civ. P.
26(a)(2).  It is clear that Plaintiff has not met his
obligations, as Mr. Edelston states that he was not
able to commence work on an expert report for this
matter "until after January 15, 2014," after the expert
discovery cutoff.  Dkt. #52 (Edelston Decl.) ¶ 6.

Without a stipulation or Court order, Plaintiff was
obligated to include Mr. Edelston's expert report with
his expert discovery disclosures.  Fed. R. Civ. P.
26(a)(2).  A plaintiff's failure to timely provide his
expert disclosures has been found to be neither
substantially justified nor diligent.  See Wong v.
Regents of Univ. of California, 410 F.3d 1052, 1062
(9th Cir. 2004).  Such is also the case here as
Plaintiff inordinately delayed producing an expert
report until long after the discovery and expert cutoff
dates.  See Dkt. ##28, 37.

Moreover, it is clear that Plaintiff's failure to
produce an expert report is not harmless.  Plaintiff
presented Mr. Edelston's declaration just three days
before the rebuttal expert cutoff date (see Dkt. #28).
Even assuming that Mr. Edelston was prepared to present
his report on that day, it is unlikely, and highly
implausible, that Defendants could adequately prepare
for Mr. Edelston's report in this short period of time.
Allowing Plaintiff to now present this evidence would
cause a flagrant "[d]isruption to the schedule of the
court" in a manner that is not harmless.  Wong, 410
F.3d at 1062.

Even more troubling is Plaintiff's additional
request to produce expert discovery in the form of Mr.
Kaplan's expert testimony.  See Opp'n to Mot. for Summ.
J. 9:21-22.  Plaintiff has failed to disclose anything
with respect to Mr. Kaplan outside his name and address

1  - much less what opinions Mr. Kaplan is likely to
2  express, how he will reach those opinions, or, more
3  importantly, how those findings affect summary
4  judgment.  Plaintiff simply states that Mr. Kaplan will
5  rely on Mr. Edelston's findings and opinions to prepare
6  his testimony.  See id.  In short, just as the Court
7  finds Plaintiff's disclosure of Mr. Edelston to be
8  untimely, unjustified, and not harmless, the Court, *a*
9  *fortiori*, so finds Plaintiff's disclosure of Mr.
10  Kaplan.

11      Because Plaintiff was not diligent in seeking this
12  discovery, his delay in seeking this discovery was not
13  substantially justified, and because his failure to
14  produce this discovery is not harmless, the Court
15  declines to grant Plaintiff's Fed. R. Civ. P. 56(d)
16  request.

17      Consequently, the Court finds that Plaintiff cannot
18  present any evidence showing that he has suffered
19  actual damages.  Thus, the Court finds that there is no
20  genuine issue of material fact on this issue.
21  Accordingly, because Plaintiff is unable to show actual
22  damages as the result of an inaccuracy in the MED,
23  Defendants are entitled to judgment as a matter of law.
24  For this reason, as well as the fact that there is no
25  genuine issue that Defendants did not act intentionally
26  or willfully, the Court **GRANTS** Defendants' Motion for
27  Summary Judgment.

28              iii. *Conclusion*

Because the Court finds that Plaintiff cannot
present a genuine issue of material fact for two
required elements of his Privacy Act claim - namely
that Defendant CMS intentionally and willfully failed
to accurately maintain the MED and that as a result
Plaintiff suffered actual damages - the Court finds
that Defendant CMS is also entitled to summary
judgment.

    3.  <u>Evidentiary Objections</u>

The Court need not rule on any evidentiary
objections beyond the those already ruled upon as a
basis for reaching the Court's conclusions as it did
not rely on that evidence in granting summary judgment.
Accordingly, the Court deems as **MOOT** the Parties'
remaining evidentiary objections.

### IV.  Conclusion

For the foregoing reasons, the Court hereby **GRANTS**
Defendants' Motion for Summary Judgment [41] and **DENIES**
Plaintiff's Motion for Leave to File a First Amended
Complaint [43].  Further, the Stipulation to Continue
[64] is **DENIED AS MOOT.**

**IT IS SO ORDERED.**
DATED: March 18, 2014

RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge