# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINOD C. PATWARDHAN, M.D., | CV 13-0076 RSWL (DTBx) |
| Plaintiff, | |
| v. | **Statement of Uncontroverted Facts and Conclusions of Law re: Defendants' Motion for Summary Judgment [41]** |
| UNITED STATES OF AMERICA, ex rel., DEPARTMENT OF HEALTH AND HUMAN SERVICES, CENTERS FOR MEDICARE AND MEDICAID SERVICES; GENERAL SERVICES ADMINISTRATION; and PALMETTO GBA, LLC, | |
| Defendants. | |

After consideration of all the papers submitted pursuant to Defendants Centers for Medicare and Medicaid Services ("CMS") and General Services Administration's ("GSA") (collectively, "Defendants") Motion for Summary Judgment [41], the Court makes the following findings of fact and conclusions of law.

///

///

///

1

1                    **UNCONTROVERTED FACTS**
1.   In May 2009, Plaintiff Vinod C. Patwardhan ("Plaintiff") was convicted of conspiracy, misbranding drugs into interstate commerce with intent to defraud or mislead, and smuggling. Defendants' Statement of Uncontroverted Facts and Conclusions of Law ("DSUF") ¶ 2; Plaintiff's Statement of Genuine Issues ("PSGI") ¶ 2; see United States v. Patwardhan, ED CR 08-00172 VAP, 2009 WL 2190191, at *1 (C.D. Cal. July 18, 2009) aff'd 422 F. App'x 614 (9th Cir. 2011).
2.   As a result of Plaintiff's conviction, Defendant CMS revoked Plaintiff's Medicare billing privileges effective May 8, 2009 pursuant to 42 U.S.C. § 1395u(h)(8) and 42 C.F.R. § 424.535.  DSUF ¶ 3; PSGI ¶ 3; Dkt. #41-3.
3.   Defendant CMS is the division of the Department of Health and Human Services ("HHS") responsible for administering the Medicare program on behalf of the Secretary of HHS.  See Health Care Financing Administration; Statement of Organization, Functions, and Delegations of Authority, 46 Fed. Reg. 56,911 (Nov. 19, 1981); 42 C.F.R. § 400.200.
4.   42 U.S.C. § 1395u(h)(8) allows the Secretary of HHS to refuse to enter into an agreement, terminate an agreement, or refuse to renew an agreement with a physician or supplier, "in the event that such physician or supplier has been convicted of a

1 felony under Federal or State law for an offense
2 which the Secretary determines is detrimental to
3 the best interests of the program or program
4 beneficiaries." Defendant CMS, accordingly, has
5 the authority to revoke a physician's Medicare
6 billing privileges when he is convicted of a
7 felony. See 42 C.F.R. § 424.535(a)(3).
8 5. Defendant CMS delegates certain functions to its
9 Medicare administrative contractors, including
10 determining the amount of the payments to be made
11 to provides as required by the Medicare statute.
12 42 U.S.C. § 1395kk-1(a)(4)(A).
13 6. When a physician's billing privileges are revoked
14 based on a felony conviction, the revocation is
15 effective as of the date of the conviction. 42
16 C.F.R. § 424.535(g). Not only is such a physician
17 no longer eligible to receive payment from medicare
18 (42 C.F.R. § 424.505), but such a physician is also
19 barred from participating in the Medicare program
20 from the effective date of the revocation until the
21 end of the re-enrollment bar (42 C.F.R. §
22 424.535(c)).
23 7. In 2011, the Office of the Inspector General
24 ("OIG"), a staff division of HHS, excluded
25 Plaintiff from participation in Medicare, Medicaid,
26 and all other federal health programs pursuant to
27 42 U.S.C. § 1320a-7. DSUF ¶ 4; PSGI ¶ 4; Dkt. #41-
28 4.

8. The exclusion was effective on July 20, 2011. See Dkt. ##41-4, 41-5.

9. However, OIG later granted Plaintiff a partial waiver of his exclusion pursuant to 42 U.S.C. § 1320a-7(c)(2)(B) and 42 C.F.R. § 1001.1801(b). DSUF ¶ 5; PSGI ¶ 5; Dkt. ##41-4, 41-5. OIG granted Plaintiff a limited waiver of his exclusion for oncological items and services he provided in Upland, California, which became effective on December 20, 2011. See Dkt. #41-5.

10. Defendants contend that the information about Plaintiff's waiver was added to the MED on February 9, 2012. Dkt. #41-15 (Vogel Decl.) ¶ 5, Ex. A.

11. In October 2012, Defendant CMS decided to recognize OIG's partial waiver and reactivate Plaintiff's Medicare billing privileges for covered services to Medicare beneficiaries within the scope of OIG's partial waiver of exclusion. DSUF ¶ 6; PSGI ¶ 6; Dkt. ##41-6, 41-7.

12. OIG, not Defendant CMS, maintains the LEIE, a publicly available system of records of excluded individuals and entities. See Background Information, OIG, HHS (Feb. 18, 2014), https://oig.hhs.gov/exclusions/background.asp; Search the Exclusions Database, OIG, HHS (Feb. 18, 2014), http://exclusions.oig.hhs.gov; Dkt. #41-15 (Vogel Decl.) ¶ 4.

13. The Secretary of HHS delegates to OIG authority to exclude individuals and entities from federal health care programs based upon certain categories of convictions or other specified conduct. 42 U.S.C. § 1320a-7; 42 C.F.R. § 1001.
14. If an individual or entity is excluded by OIG, he may not be reimbursed under Medicare, Medicaid, or another federal healthcare program. 42 C.F.R. § 1001.2.
15. OIG has the authority to waive an individual or entity's exclusion as a provider from federal health care programs. 42 U.S.C. § 1320a-7(c)(3)(B); 42 C.F.R. § 1001.1801. Waivers may be given to excluded providers who are the "sole community physician or sole source of essential specialized services in a community." Id.
16. On top of the LEIE, OIG also maintains a list of excluded individuals or entities to whom OIG has granted a waiver. See Waivers, OIG, HHS (Feb. 18, 2014), http://oig.hhs.gov/exclusions/waivers.asp.
17. Defendant CMS is the system manager of the Medicare Exclusion Database ("MED"). See Privacy Act of 1974; Report of New System, 67 Fed. Reg. 8810-01 (Feb. 26, 2002).
18. The purpose of the MED "is to retrieve information to aid in the ability of CMS and its contractors . . . to ensure that no Medicare payments are made with respect to any item or service . . . furnished

|   |   |
|---|---|
| 1 | by an individual or entity during the period when |
| 2 | such individual or entity is excluded from |
| 3 | participation in Medicare." <u>Id.</u>  The MED contains |
| 4 | information about individuals and entities who have |
| 5 | been excluded by OIG; the MED also includes waiver |
| 6 | information.  <u>Id.</u>; Dkt. #41-15 (Vogel Decl.) ¶ 4. |
| 7 | Defendant CMS receives a monthly file of exclusion |
| 8 | data from the OIG; that file is automatically |
| 9 | loaded and the data is incorporated into the MED. |
| 10 | Dkt. #41-15 (Vogel Decl.) ¶ 3. |
| 11 | 19. When there is a waiver or exception to an |
| 12 | exclusion, OIG sends this information to Defendant |
| 13 | CMS to incorporate into the MED through the |
| 14 | application's front-end interface.  <u>Id.</u>, Ex. A. |
| 15 | 20. Access to the MED is limited.  <u>See</u> Privacy Act of |
| 16 | 1974; Report of a Modified or Altered System of |
| 17 | Records, 71 Fed. Reg. 70967 (Dec. 7, 2006).  In |
| 18 | fact, "[t]he government will only release MED |
| 19 | information that can be associated with an |
| 20 | individual as provided" under its routine use |
| 21 | policies.  <u>Id.</u>  Rather, MED information is provided |
| 22 | only in certain circumstances, generally to support |
| 23 | Defendant CMS, its contractors, research |
| 24 | organizations, or other government agencies in |
| 25 | connection with the Medicare and Medicaid programs. |
| 26 | <u>Id.</u>  In any event, it is clear that the MED is not |
| 27 | publicly available. <u>See</u> <u>id.</u> |
| 28 | 21. Defendant GSA is a federal executive agency.  40 |

1  U.S.C. § 301.  Defendant GSA currently operates the
2  System for Award Management ("SAM") Exclusions,
3  which includes a database called the Excluded
4  Parties List System ("EPLS").  48 C.F.R.
5  9.404(a)(1); DSUF ¶ 13; PSGI ¶ 13.
6  22. Plaintiff does not dispute that he was not damaged
7  by any information in either EPLS or SAM.  DSUF ¶
8  15; PSGI ¶ 15.

**CONCLUSIONS OF LAW**

1. Plaintiff's sole remaining cause of action is under the Privacy Act's accuracy provisions.  See Compl. ¶¶ 23-25; Dkt. #38.
2. Generally speaking, in order to state an accuracy claim under the Privacy Act, "an individual must show '1) that the government failed to fulfill its record keeping obligation, 2) which failure proximately caused the adverse determination, 3) that the agency failed intentionally or willfully to maintain the records, and 4) that the plaintiff suffered actual damages.'"  Rouse v. U.S. Dep't of State, 567 F.3d 408, 417 (9th Cir. 2009) (quoting Rose v. United States, 905 F.2d 1257, 1259 (9th Cir. 1990); Hewitt v. Grabicki, 794 F.2d 1373, 1379 (9th Cir. 1986)); 5 U.S.C. §§ 552a(g)(1)(C) and (D), 552a(g)(4).
3. In order for a plaintiff to prevail under his Privacy Act claim, he must show that the agency acted in a manner that was intentional or willful.

1  See 5 U.S.C. § 552a(g)(4). Courts have held this
2  to require that the plaintiff show that the
3  agency's conduct amounted to something greater than
4  gross negligence. Beaven v. U.S. Dep't Justice,
5  622 F.3d 540, 549 (6th Cir. 2010); Mount v. U.S.
6  Postal Serv., 79 F.3d 531, 534 (6th Cir. 1996)
7  (quoting White v. Office of Personnel Mgmt., 840
8  F.2d 85, 87 (D.C. Cir. 1988); Rose, 905 F.2d at
9  1260 (quoting Johnston v. Horne, 875 F.2d 1415,
10 1422 (9th Cir. 1989)); Covert v. Harrington, 876
11 F.2d 751, 757 (9th Cir. 1989) (holding that an
12 agency acts in a willful or intentional manner when
13 it acts without grounds for believing the act to be
14 lawful or flagrantly disregarding others' rights
15 under the Privacy Act).
16 4. Plaintiff has not presented any evidence showing
17 that Defendants failed to update the MED without
18 grounds for believing it to be lawful or otherwise
19 flagrantly disregarded his rights under the Privacy
20 Act. Such is required to state an accuracy claim
21 under the Privacy Act. See Covert, 876 F.2d at
22 757.
23 5. The Court finds that Plaintiff has failed to show
24 that Defendants intentionally or willfully acted in
25 violation of their record keeping obligations.
26 6. Plaintiff must show actual damages to sustain his
27 Privacy Act claim. Doe v. Chao, 540 U.S. 614, 620,
28 623 (2004) (holding that the "minimum guarantee" in

5 U.S.C. § 552a(g)(4)(A) "goes only to victims who prove actual damages"); see also Beaven v. U.S. Dep't Justice, 622 F.3d 540, 557-59 (6th Cir. 2010) (applying Chao); Van Alstyne v. Elec. Scriptorium, Ltd., 560 F.3d 199, 203, 206 (4th Cir. 2009) (applying Chao and applying its reasoning to 18 U.S.C. § 2707 to require proof of actual damages); Rouse, 567 F.3d at 417; Stafford v. Social Sec. Admin., 437 F. Supp. 2d 1113, 1117 (N.D. Cal. 2008).

7. Consequently, the Court finds that Plaintiff cannot present any evidence showing that he has suffered actual damages.  Thus, the Court finds that there is no genuine issue of material fact on this issue.

**IT IS SO ORDERED.**

DATED: March 18, 2014

                              RONALD S.W. LEW
                              _____
                              **HONORABLE RONALD S.W. LEW**
                              Senior U.S. District Judge